UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>                Plaintiff,<br><br>v.<br><br>REALPAGE INC. a/k/a LEASINGDESK SCREENING,<br><br>                Defendant. | Case No. 4:23-cv-3683<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM OR, IN THE ALTERNATIVE, MOTION FOR LIMITED PROTECTIVE ORDER** |

Plaintiff, John Doe, moves for leave to proceed under pseudonym or, in the alternative, for entry of a limited protective order pursuant to Fed. R. Civ. P. 26(c)(1), and states the following in support:

**I.    RELEVANT FACTS**

At a date prior to the relevant time period, Plaintiff applied for and received an expunction of certain criminal records pursuant to Tex. Code Crim. Proc. art. § 55.02. Under Texas state law, an expunction – also known as an expungement – means that "the release, maintenance, dissemination, or use of expunged records and files for any purpose is prohibited." Tex. Code Crim. Proc. art. § 55.03. Upon receiving the expunction, Plaintiff's prior criminal records were automatically removed from the public record.

On August 28, 2023, Plaintiff and his significant other arrived at non-party Reserve at Kingwood ("Reserve") with the intent of moving in. Plaintiff's significant other had previously applied and was approved by Reserve with a move-in date of August 28, 2023. Upon arrival, Plaintiff learned that if Plaintiff wanted to move-in with his significant other, he would need to submit an application as well. Plaintiff submitted an application that same day. Plaintiff's

1

application was conditioned upon Plaintiff passing a background check. Reserve contracts with Defendant to conduct background checks, including criminal background checks, on prospective tenants. On or about August 28, 2023, Reserve ordered a criminal background check on Plaintiff from Defendant. That same day, Defendant completed its background check report about Plaintiff and sold the same to Reserve. Within that background check report, Defendant published inaccurate information about Plaintiff, including an expunged criminal record from Texas. How Defendant obtained these records, when the same were automatically erased from public view by operation of Texas state law, is unknown. However, an up-to-date review of the publicly available court records would not have included the expunged criminal records included in Plaintiff's background report.

As a result of Defendant's inaccurate reporting, Plaintiff was denied the housing opportunity at Reserve, and Plaintiff and his significant other were forced to search for alternative housing at the last minute. Ultimately, Plaintiff's significant other was able to get approved for another apartment, however, the housing was much less desirable. Plaintiff is refraining from submitting an application to move-in with his girlfriend at the less desirable apartment as he is afraid Defendant will report inaccurate information to the new apartment as well. This is precisely the type of harm Texas' expunction process is intended to prevent.

This well-deserved lawsuit followed, asserting a claim against Defendant under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681e(b).

## II.     APPLICABLE LAW

Litigating under a pseudonym "requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). The Fifth Circuit has identified three factors "common to those exceptional cases in which

the need for party anonymity overwhelms the presumption of disclosure": (1) plaintiffs are "suing to challenge governmental activity; (2) prosecution of the suit compels plaintiffs to disclose information 'of the utmost intimacy;' and (3) plaintiffs [are] compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 185 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynn & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).

These factors do not form a "rigid, three-step test for the propriety of party anonymity." *Id.* A party need not prove all three to proceed anonymously. *See Doe v. El Paso Cty. Hosp. Dist.*, No. EP-13-CV-406-DCG, 2015 WL 1507840, at *2 (W.D. Tex. Apr. 1, 2015) (citing *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011); *Stegall*, 653 F.2d at 186). Nor are the factors exclusive. The Fifth Circuit chose to "advance no hard and fast formula for ascertaining whether a party may sue anonymously." *Stegall*, 653 F.2d at 186. Courts, therefore, have considered other circumstances, including whether plaintiffs would face threats of "violence or physical harm by proceeding in their own names, and whether their anonymity posed a unique threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316 (citing *Stegall*, 599 F.2d at 713).

A motion to file identifying documentation under seal must overcome the "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also United States v. Apothetech RX Specialty Pharm. Corp.*, No. 3:15-CV-588-CWR-FKB, 2017 WL 1100818, at *1 (S.D. Miss. Mar. 20, 2017) ("court records are presumptively in the public domain"). "However, the public's common law right is not absolute." *Sec. and Exch. Comm'n v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon*, 435 U.S. at 598). "In exercising its discretion, a district court must 'balance the public's common law right of access against the interests favoring nondisclosure.'" *Test Masters Educ. Serv., Inc. v. Robin Singh Educ. Serv., Inc.*, 799 F.3d 437, 454 (5th Cir. 2015) (quoting *Van Waeyenberghe*, 990 F.2d at 848).

**III.    ARGUMENT**

In this case, the balance between the "public's common law right of access" and the "interests favoring nondisclosure" weighs heavily in favor of permitting Plaintiff to proceed pseudonymously. *Test Masters Educ. Serv., Inc.*, 799 F.3d at 454.  The public has expressly spoken via the enactment of both federal and state law, and both (1) disclaimed its interest in Plaintiff's identity, and (2) identified the dissemination of inaccurate and expunged criminal records as a specific harm to be avoided. With the FCRA, Congress spoke clearly by enacting a statutory scheme intended to protect consumers from exposure of private or inaccurate facts. The FRCA acknowledges the importance of confidentiality in its description of the purpose of the Act:

> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the ***confidentiality, accuracy, relevancy, and proper utilization of such information*** in accordance with the requirements of this subchapter.

15 U.S.C § 1681(b) (emphasis supplied).

The FCRA itself provides that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). To protect consumers as fully as possible from unwarranted disclosures, the FCRA provides for statutory penalties, as well as recovery of compensatory damages and punitive damages and attorney-fee-shifting provisions.

Texas state law also provides that individuals with expunged records are not to be subject to the embarrassment and stigma inherent in the association with a criminal record. Indeed, where an expunction is issued,

> (1) the release, maintenance, dissemination, or use of the expunged records and files **for any purpose is prohibited**;
> (2) except as provided in Subdivision (3) of this article, the person arrested **may**

4

> **deny the occurrence of the arrest and the existence of the expunction order**; and
>
> (3) the person arrested or any other person, **when questioned under oath** in a criminal proceeding about an arrest for which the records have been expunged, **may state only that the matter in question has been expunged**.

Tex. Code Crim. Proc. art. 55.03. In other words, an arrest, conviction, and any proceedings related thereto are treated as though they did not occur.

Both Congress and the Texas state legislature have clearly spoken: A citizen's criminal record is to be treated with the utmost care. Dissemination of the same is handled in a confidential and accurate manner, and should that record be erased, it is not to be used by the public to stigmatize or hinder the citizen's future prospects. Such information is therefore definitionally "of the utmost intimacy," the disclosure of which would be required to pursue Plaintiff federal consumer protection rights. *Stegall*, 653 F.2d at 186.

Thus, the public interest in favor of open judicial proceedings is far outweighed by Plaintiff's interest in keeping his identity private to protect himself from further economic and reputational harm. Without leave to proceed under a pseudonym, Plaintiff would face a serious and substantial risk of harm. Frankly stated, denial of Plaintiff's motion would require him to choose between the enforcement of his federal rights and the enjoyment of his state rights. Simply put, by litigating under his true name, Plaintiff would be creating a public record linking him to a criminal record, where no such record should exist, and where no such record does exist (a fact of which undergirds the entirety of this lawsuit), which will negatively impact future housing and employment opportunities. Plaintiff has already experienced rejection from housing because of the exposure of his expunged record. Plaintiff's publicly litigating to hold Defendant accountable for falsely associating him with a criminal record will have the effect of massively distributing the very same falsehood. Unless permitted to proceed in pseudonym, Plaintiff's action would be the equivalent of attaching a bullhorn to Defendant's falsity that was heretofore in limited, though

injurious, circulation.

Stated another way, without leave to proceed under pseudonym, Plaintiff will be forced to choose between (1) maintaining the clear judicial record wherein no publicly available information links him to a criminal record, or (2) prosecuting the statutory protections provided to him by the FCRA. This would have a chilling effect on any consumer's ability to vindicate his rights where criminal records are improperly reported.

Further, there is no argument that Plaintiff's requested anonymity would pose "a unique threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316. Plaintiff is not requesting that his identity be hidden from Defendant, just not disseminated to the public at large in conjunction with the underlying criminal records that should never have been published in the first place. Defendant will be able to fully and fairly litigate against Plaintiff without publicly revealing his identity, and Defendant has no legitimate interest in forcing Plaintiff to reinjure himself in order to enforce his federal consumer protection rights.

## IV. IN THE ALTERNATIVE, PLAINTIFF MOVES THE COURT FOR ENTRY OF A LIMITED PROTECTIVE ORDER.

Fed. R. Civ. P. 26(c) provides, in relevant part, that "for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Pursuant to this authority, Plaintiff seeks an order protecting his privacy and confidentiality throughout the proceedings and to avoid public disclosure of the details alleged in his complaint so as to avoid making his statutorily erased record public. Plaintiff incorporates all of the arguments set forth above in support of his motion to proceed under pseudonym herein as supportive of a finding of "good cause" for the entry of a protective order.

Thus, in the event that Plaintiff's true identity must be revealed in these proceedings, Plaintiff requests that the Court enter a limited protective order (the exact language of which can

be threshed out with the input of all parties) which would require either (1) any reference to his true identity or identifying information, or (2) descriptions and references to the underlying facts of the case, inclusive of the erased criminal records, to be filed under seal. *See e.g. Doe v. Rentgrow, Inc.*, 2023 U.S. Dist. LEXIS 114786, *5 ("The plaintiff will not be allowed to proceed anonymously but, pursuant to a protective order, will be allowed to redact sensitive information in pleadings filed in open court.").

**V.      CONCLUSION**

Because both federal and Texas law recognize the confidentiality of Plaintiff's criminal records, and because forcing Plaintiff to reveal his identity would create a situation where Plaintiff would be required to waive his protections under Texas law to seek enforcement of his FCRA rights, the Court should grant leave to Plaintiff to proceed under a pseudonym. In the alternative, the Court should permit the entry of a limited protective order designed to prevent the re-dissemination of confidential information – and the harm inherent in such dissemination – via public filings in this case.

Dated: September 29, 2023

*/s/ McKenzie Czabaj*
McKenzie Czabaj, AZ Bar #036711
David A. Chami, AZ Bar #027585
Consumer Attorneys, PLC
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2376
Email: mczabaj@consumerattorneys.com
Email: dchami@consumerattorneys.com

*Attorneys for Plaintiff
John Doe*